## BLAKE, MOFFITT & TOWNE v. CALIFORNIA FRUIT GROWERS' EXCHANGE et al.

(District Court, S. D. California, S. D. October 4, 1926.)

1. Patents ⊚⇒328.

Crumrine patent, No. 1,099,281, claim 3, for fruit package, *held* valid and infringed.

2. Patents ⊚⇒46.

Utility of invention is not tested by requirement that its use shall be universal in a particular industry, but substantial commercial demand establishes utility.

In Equity. Patent infringement suit by Blake, Moffitt & Towne against the California Fruit Growers' Exchange and another. Decree for plaintiff.

John H. Miller, of San Francisco, Cal., for plaintiff.

Chas. E. Townsend, of San Francisco, Cal., for defendants.

JAMES, District Judge. Plaintiff, successor by assignment to the right granted one Crumrine by letters patent No. 1,099,-281, brings this suit, claiming infringement, and asks to recover damages and be allowed an injunction. The defenses of noninvention and absence of novelty and utility are all urged against the patent.

[1] The invention concerns a combination of elements or parts designed to produce a fruit package in condition ready for shipment, where the fruit is left undamaged by the process of packing. The combination is used particularly, and perhaps exclusively, in the packing of citrus fruits—mainly oranges and lemons. In the packing of such fruit a wooden box is used. In the filling of these boxes, and in order that there shall be no looseness in the pack, the top layer of fruit, before the cover is fastened to the box, extends above the edges of the receptacle.

After a box has been filled, the cover is placed thereon and a press is used to force the fruit downward, in order to bring the cover in contact with the ends, so that it may be nailed into place. In this operation the row of fruit at each end of the box is apt to suffer abrasion, as it is forced past the edges of the ends and corners with which it is in contact. To avoid this damage to the fruit, Crumrine designed an element to be used in connection with the cover and box, and which he refers to in describing his invention as "a means which becomes a part of the package itself, and which serves to prevent the upper fruit from being thus damaged."

While the bill of complaint offers an issue as to each of the four claims set forth in the patent, claim 3 was selected at the trial by plaintiff's counsel as the only one to be tested under the evidence. That claim is as follows:

"3. A fruit package comprising a box for holding the fruit, a guard consisting of a sheet of self-supporting, flexible material having inturned wings at each end thereof; said guard being arranged between the edge of the box and the fruit, with its winged portions fitting the corners of the box, said guard preventing contact of the fruit with the edge of the box when the cover is applied."

At the time the alleged invention was perfected, there was nothing new in the use of a wooden box for the packing of citrus fruit, nor in the practice of filling the box above its edges and forcing the fruit downward under pressure as the top was placed in position. The inventor's discovery consisted alone in the use, in combination with the box, its top, and the fruit, of a strip of flexible, firm material, placed between the end row of the fruit and the box edge, with turned wings at each corner. This strip is intended to be quickly put in position by the packer, and when the cover is placed on the box, and the box is put under the press, the strip moves downward with the fruit without being further manipulated or handled.

The adaptation of the turned strip to the box combination was not an obvious expedient which would occur to any fruit packer. It was obvious enough, of course, that a firm strip of material, *held in place* between the fruit and the end of the box as the cover was forced down, would prevent abrasion to the fruit; but the evidence does not show that the straight strip which had been used prior to the date of the patent in suit would carry down in place with the fruit, except where the operator took the time and trouble to fold the upper and protruding edge over the fruit as he placed the cover thereon, nor would it protect as well the corner fruit. The turned-end strip requires no manipulation, but descends simultaneously with the fruit as the top is pressed on. The same result may have been secured in a number of different ways, but the particular form shown in the patent combination was not in use when Crumrine invented it.

It is easy, as has often been said in patent decisions, for a person, after seeing the operation of some contrivance, to say that such a device is so simple that any person with reasonable familiarity with the subject would readily have thought of it. The best proof to negative such a claim is that which is produced here, to wit, that no other person seems to have thought of it before Crumrine did. The combination claimed was not one that would be suggested "spontaneously and by the necessity of human reasoning in the minds of those having their attention directed to the subject." Walker on Patents (5th Ed.) p. 23, citing Hollister v. Benedict Mfg. Co., 113 U. S. 72, 5 S. Ct. 717, 28 L. Ed. 901. The use of the turned strip was not merely adding to known forms, sizes, or dimensions. Invention was involved.

From what has been stated, the question of the usefulness or utility of the invention has also been answered; answered, too, without reference to any balancing of proof by narrow margins, under the rule requiring a defendant to produce clear and satisfactory evidence of the facts under a defense of nonutility.

A further statement of the facts, as established in the main without conflict of evidence, will serve to support the conclusions just stated. Those facts show recognition of the patent combination covering several years' time, and direct acquiescence in the right of monopoly in the plaintiff; they show as well the willful infringement committed by defendants and the common relation of the infringers to each other.

The California Fruit Growers' Exchange is a co-operative association, organized for the better marketing of California Fruits, with packing houses where the fruit is arranged, prepared, and packed for shipment, located in many towns and communities throughout the state. The Fruit Growers' Supply Company, while separately organized, constitutes the buying department of the Exchange, and furnishes the several packing houses with all supplies needed.

In about 1917 (the plaintiff then being the sole owner of the patent right), the Supply Company began buying the end strip board for the turned corner combination from the plaintiff. At the same time it bought short board material, long enough only to extend across the width of the packing boxes. These latter are not claimed to have had any novelty in use at the time the patent here was applied for or issued. The long strips, designed to be turned at the corners, were marketed under the trade-name of "Nokut End Guards." Plaintiff sold to the Supply Company the latter merchandise during the several years specified, in the following quantities: 1917, 5,000,000; 1918, 4,000,000; 1919, 8,000,000; 1920, 8,000,000; 1921, 9,000,000; 1922, 7,000,000; 1924, 7,000,000. Approximately double the number of short boards were sold to the Supply Company during the same years.

The defendants at all of these times had full knowledge of the claim of plaintiff that the "Nokut Guards" were protected by the patent covering the combination package. While one of the witnesses testified that the Supply Company protested the claim of patent, the merchandise was bought continuously from the plaintiff, notwithstanding the existence of many paper supply houses and the existence of printing establishments possessing facilities for cutting and preparing the strips, until about the latter part of the year 1924. At this time a rival of plaintiff in the paper supply business agreed to supply the strips at a less price than plaintiff was charging, and agreed also to guarantee that the users would suffer no loss if damages were recovered against them for patent infringement. Whereupon the Supply Company commenced purchasing from the rival house all the strips needed in the fruit-packing business. It should be noted, also, that several supply houses engaged in handling paper products have accepted license contracts under plaintiff and are contributing royalties in recognition of the patent right.

It is true enough that the short strip of cardboard, extending only across the width of the packing box, was shown to have been employed in packing citrus fruit at a date prior to the filing of Crumrine's application for patent. From all of the testimony it must be said, I think, that the short strip, not made to turn the ends at the corners, did not serve the purpose, or operate in combination, in the same manner as does the end-turned strip. A witness for defendants admitted that in its use the hand of the packer was needed to fold over the top of the strip under the cover, and no witness agreed that such a short strip would with regularity, unless manipulated as stated, go down evenly with the fruit as the box top was pressed into place. All agreed that the corner oranges or lemons are liable to be bruised and injured in every case where the short strip is used. The testimony tended to show that there had been a lessening use of the turned strip during latter years.

[2] This conceded fact, without considering that the cause was other than to save added expense, in no wise argues against the usefulness of the device. The utility of an invention is not tested by a requirement that its use shall be universal in a particular industry. If it has attained the position of being in substantial commercial demand, all question of utility must be said to be conclusively set at rest.

Decree is ordered in favor of the plaintiff for an injunction as prayed for, touching infringement of claim 3 of the patent. Judgment for damages will also be entered, and, unless the amount is agreed upon between the parties, an accounting will be had before a master, to be hereinafter named. Costs incurred by plaintiff will be added to the judgment.